

**FILED** SXB
2/25/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
) No. 20 CR 293
v. )
) Violations: Title 18, United States
RAHUL SHAH ) Code, Sections 1344, 1014, and 1028A
)

<u>**COUNT ONE**</u>

JUDGE DOW JR.
MAGISTRATE JUDGE VALDEZ

The SPECIAL JANUARY 2020 GRAND JURY charges:

1.    At times material to this indictment:

    a.    Bank A was a financial institution headquartered in Pittsburgh, Pennsylvania, the deposits of which were insured by the Federal Deposit Insurance Corporation.

    b.    The U.S. Small Business Administration ("SBA") was a United States government agency that provided support to small businesses.

    c.    N2N Holdings, LLC ("N2N") was a Limited Liability Company doing business as Boardshare, with a principal place of business in Evanston, Illinois.

    d.    N2N was owned, operated, and controlled by RAHUL SHAH and his spouse, Individual A, both of whom were residents of Evanston, Illinois.

    e.    In addition to N2N, SHAH and Individual A owned and controlled other information technology companies and, as a result, had access to the means of identification, including names, social security numbers, taxpayer identification numbers, and dates of birth, of employees, spouses of employees, and contractors of these entities.

f.      The Coronavirus Aid, Relief, and Economic Security ("CARES")

Act was a federal law enacted in or around March 2020 and designed to provide

emergency financial assistance to the millions of Americans who were suffering the

economic effects caused by the COVID-19 pandemic. One source of relief provided by

the CARES Act was the authorization of up to $349 billion in forgivable loans to small

businesses for job retention and certain other expenses, through a program called the

Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized

over $320 billion in additional funding for PPP loans.

g.      In order to obtain a PPP loan, a business submitted a PPP loan

application, which was signed by an authorized representative of the business. The

PPP loan application required the business (through its authorized representative)

to acknowledge the program rules and make certain affirmative certifications

regarding its eligibility. In the application, the small business's authorized

representative was required to provide, among other things, the business's average

monthly payroll expenses and number of employees. These figures were used to

calculate the business's eligibility and the amount of money it could receive under the

PPP. In addition, businesses applying for a PPP loan were required to provide

documentation showing their payroll expenses.

h.      PPP loan proceeds were required to be used by the business for

certain permissible expenses—payroll costs, interest on mortgages, rent, and

utilities. The PPP allowed the interest and principal on the PPP loan to be entirely

forgiven by the SBA if the business spent the loan proceeds on these items within a

designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

       i.     To gain access to funds through the PPP, small businesses applied through financial institutions participating in the PPP and received the loans directly from those financial institutions as the lenders.

       j.     Participating financial institutions required applicants for PPP loans to provide truthful information, including truthful information about the business's operating expenses, the business's employees, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

    2.    Beginning in or around April 2020, and continuing until in or around May 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

RAHUL SHAH,

defendant herein, and others known and unknown to the grand jury, participated in a scheme to defraud Bank A, and to obtain money and funds owned by and under the custody and control of Bank A, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

    3.    It was part of the scheme that, on or about April 5, 2020, SHAH submitted and caused to be submitted to Bank A an application on behalf of N2N for a PPP loan in the amount of approximately $441,138, knowing that the application contained materially false and fraudulent information regarding N2N's payroll and number of employees.

4.    It was further part of the scheme that, on or about April 5, 2020, SHAH submitted and caused to be submitted to Bank A fictitious IRS Forms 941, which SHAH knew overstated N2N's payroll expenses and number of employees.

5.    It was further part of the scheme that, on or about April 5, 2020, SHAH submitted and caused to be submitted to Bank A fictitious IRS Forms 1099 purporting to show payments from N2N to certain individuals, knowing that these individuals had not received such payments from N2N, and knowing that the fictitious IRS Forms 1099 SHAH submitted contained means of identification for certain individuals, including such individuals' names, social security numbers, dates of birth, and taxpayer identification numbers.

6.    It was further part of the scheme that, on or about April 5, 2020, SHAH submitted and caused to be submitted to Bank A fictitious payroll schedules, which SHAH knew misstated payroll disbursements that N2N made to various individuals.

7.    It was further part of the scheme that, on or about April 25, 2020, SHAH submitted and caused to be submitted to Bank A a first revised application on behalf of N2N for a PPP loan in the amount of approximately $139,000, knowing that the application contained materially false and fraudulent information regarding N2N's payroll and number of employees.

8.    It was further part of the scheme that, on or about April 30, 2020, SHAH resubmitted and caused to be resubmitted to Bank A the first revised application on behalf of N2N for a PPP loan in the amount of approximately $139,000, knowing that

the application contained materially false and fraudulent information regarding N2N's payroll and number of employees.

9. It was further part of the scheme that, on or about May 13, 2020, SHAH submitted and caused to be submitted to Bank A a second revised application on behalf of N2N for a PPP loan in the amount of approximately $139,000, knowing that the application contained materially false and fraudulent information regarding N2N's payroll and number of employees.

10. It was further part of the scheme that, on or about May 13, 2020, SHAH submitted and caused to be submitted to Bank A fictitious IRS Forms 941, which SHAH knew overstated N2N's payroll expenses and number of employees.

11. It was further part of the scheme that, on or about May 18, 2020, SHAH submitted and caused to be submitted to Bank A a third revised application on behalf of N2N for a PPP loan in the amount of approximately $99,175, knowing that the application contained materially false and fraudulent information regarding N2N's payroll and number of employees.

12. In furtherance of the scheme, SHAH represented to Bank A, in loan applications and their supporting documentation, that certain employees and contractors were compensated by N2N, while also simultaneously claiming in PPP loan applications to other financial institutions that those same employees and contractors were compensated by one or more other information technology companies owned and controlled by SHAH and Individual A.

13.    It was further part of the scheme that, between on or about April 2, 2020, and on or about May 18, 2020, SHAH electronically accessed and caused others to access online resources maintained by the Internal Revenue Service to obtain federal tax forms used by businesses to report payroll and other information, including IRS Forms 941 and 1099.

14.    It was further part of the scheme that SHAH misrepresented, concealed, hid, and caused to be misrepresented, concealed, and hidden, certain material facts, including the purposes of the scheme and the acts done in furtherance of the scheme.

15.    On or about April 5, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

RAHUL SHAH

defendant herein, knowingly executed the scheme, and attempted to do so, by submitting and causing to be submitted to Bank A, on behalf of N2N, a loan application and supporting documentation which fraudulently inflated N2N's number of employees and amount of payroll.

In violation of Title 18, United States Code, Section 1344.

## COUNT TWO

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraph 1 of Count One is incorporated here.

2.     On or about April 5, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RAHUL SHAH,

defendant herein, knowingly made and caused to be made false statements to Bank A, the deposits of which were insured by the Federal Deposit Insurance Corporation, with the intent to influence the actions of Bank A concerning a Paycheck Protection Program loan application, in that defendant stated:

(a)     that N2N had ten employees and an average monthly payroll of approximately $176,455;

(b)     that the purported IRS Forms 941 submitted with N2N's PPP application were substantially identical to the forms N2N submitted to the Internal Revenue Service, and that these forms accurately represented N2N's number of employees and total wages, tips, and other compensation paid for the second, third, and fourth quarters of 2019;

(c)     that the purported IRS Forms 1099 submitted with N2N's PPP application were substantially identical to the forms N2N submitted to the Internal Revenue Service or provided to Individuals B–Q, and that these forms accurately represented compensation paid by N2N to Individuals B–Q in 2019; and

(d)     that the purported monthly payroll summaries submitted with N2N's PPP application accurately represented the identities of and compensation paid to N2N's employees between April 2019 and March 2020;

In violation of Title 18, United States Code, Section 1014.

## COUNT THREE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.    Paragraph 1 of Count One is incorporated here.

2.    On or about May 13, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

RAHUL SHAH,

defendant herein, knowingly made and caused to be made false statements to Bank A, the deposits of which were insured by the Federal Deposit Insurance Corporation, with the intent to influence the actions of Bank A concerning a Paycheck Protection Program loan application, in that defendant stated:

(a)    that N2N had ten employees and an average monthly payroll of approximately $55,600; and

(b)    that the purported IRS Forms 941 submitted with N2N's PPP application were substantially identical to the forms N2N submitted to the Internal Revenue Service, and that these forms accurately represented N2N's number of employees and total wages, tips, and other compensation paid for the second, third, and fourth quarters of 2019;

In violation of Title 18, United States Code, Section 1014.

## COUNT FOUR

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.     Paragraph 1 of Count One is incorporated here.

2.     On or about May 18, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

### RAHUL SHAH,

defendant herein, knowingly made and caused to be made false statements to Bank A, the deposits of which were insured by the Federal Deposit Insurance Corporation, with the intent to influence the actions of Bank A concerning a Paycheck Protection Program loan application, in that defendant stated:

(a)     that N2N had ten employees and an average monthly payroll of approximately $39,670; and

(b)     that the purported IRS Form 941 submitted with N2N's PPP application was substantially identical to the form N2N submitted to the Internal Revenue Service, and that this form accurately represented N2N's number of employees and total wages, tips, and other compensation paid for the first quarter of 2019;

In violation of Title 18, United States Code, Section 1014.

## COUNT FIVE

The SPECIAL JANUARY 2020 GRAND JURY further charges:

1.  The allegations in paragraphs 1 and 5 of Count One of this Indictment are incorporated here.

2.  On or about April 5, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

RAHUL SHAH

defendant herein, and others known and unknown to the grand jury, during and in relation to the bank fraud offense and false statements offense charged in Counts One and Two of this Indictment, did knowingly possess and use, and cause to be possessed and used, without lawful authority, a means of identification of another person, knowing that the means of identification belonged to another person, namely, the name and taxpayer identification number of Individual B;

In violation of Title 18, United States Code, Section 1028A(a)(1).

A TRUE BILL:

_____

FOREPERSON

_____
signed by Jason Yonan on behalf of the
UNITED STATES ATTORNEY

_____
DANIEL KAHN
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE